UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-00097(JWB)

UNITED STATES OF AMERICA,

          Plaintiff,                  **PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

v.

FAHIMA EGEH MAHAMUD,

          Defendant.

The United States of America and Fahima Egeh Mahamud (hereafter, the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota and the United States Department of Justice, Criminal Division, Fraud Section (hereafter, "the United States" or "the government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.     **Charges**. The defendant agrees to plead guilty to Counts One and Two of the Information, which charge the defendant with wire fraud, in violation of 18 U.S.C. § 1343, and conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. The defendant fully understands the nature and elements of the crimes with which she has been charged.

2.     **Factual Basis**. The defendant is pleading guilty because she is in fact guilty of Counts One and Two of the Information. In pleading guilty, the defendant admits the following facts and that those facts establish her guilt beyond a reasonable

1

doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

During all times relevant to the Information, within the District of Minnesota, and elsewhere, defendant (i) knowingly devised and participated in a scheme to defraud the Federal Child Nutrition Program by means of materially false and fraudulent pretenses, representations, and promises, through the use of wire transmissions in interstate commerce, and (ii) knowingly and willfully conspired with others to defraud the U.S. Department of Health and Human Services, Administration for Children and Families (ACF) by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government function of ACF.

During all times relevant to the Information, defendant was the Chief Executive Officer of Future Leaders Early Learning Center (hereinafter, "Future Leaders"), a childcare center located in Minneapolis, Minnesota. Defendant registered the corporation with the State of Minnesota in or about March 2015.

### Count 1

The Food and Nutrition Service is an agency of the United States Department of Agriculture (USDA) that administers various federal child nutrition programs, including the Summer Food Service Program and Child and Adult Care Food Program (together, the "Federal Child Nutrition Program"). The Minnesota Department of Education (MDE) administers the Federal Child Nutrition Program in Minnesota.

2

Meals funded by the Federal Child Nutrition Program in Minnesota are served at "sites." Each site participating in the Federal Child Nutrition Program must be sponsored by an organization that is authorized to participate in the Federal Child Nutrition Program. Sponsors are required to submit an application to MDE for each site. Sponsors are responsible for monitoring each of their sites and preparing reimbursement claims for their sites.

Sponsors submit reimbursement claims to MDE on behalf of sites under their sponsorship. The USDA provides federal reimbursement funds to MDE on a per-meal basis. MDE provides the federal funds to the sponsoring agency, which in turn pays the reimbursement funds to the sites under its sponsorship. The sponsoring agency retains ten to fifteen percent of the funds as an administrative fee in exchange for sponsoring the sites, submitting reimbursement claims, and disbursing the federal funds.

Feeding Our Future was a Minnesota non-profit organization purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. Feeding Our Future was an approved sponsor of the Federal Child Nutrition Program.

Through Future Leaders, defendant participated in the Federal Child Nutrition Program as a site under the sponsorship of Feeding Our Future. As a site, Future Leaders was supposed to provide food and meals to children and be reimbursed for the cost of the food and meals it provided.

3

From December 2020 to June 2021, defendant claimed to serve tens of thousands of meals to children at the Future Leaders site each month. In reality, defendant's operations served only a fraction of those claimed meals. To further the scheme, defendant completed meal count sheets falsely representing the number of meals served at the Future Leaders site each day. Specifically, in three months worth of claims, Defendant represented in those meal counts to be serving two meals a day to about 1,000 different children, seven days a week. Defendant signed the meal counts, representing them to be accurate. However, as defendant knew, those meal counts were false and inflated. Defendant then caused those counts to be submitted to Feeding Our Future in support of Future Leaders' fraudulent claims for reimbursement.

Defendant also submitted to Feeding Our Future fraudulent invoices purporting to substantiate food purchased by Future Leaders to feed children as well phony rosters purporting to list the names of children who were served meals at the Future Leaders site. As defendant knew, those invoices did not accurately reflect the amount of food purchased and the rosters did not accurately reflect the identities and numbers of children actually fed.

Between approximately January 2021 and July 2021, Future Leaders received approximately $850,000 in Federal Child Nutrition Program funds directly from Feeding Our Future. However, only a fraction of these reimbursement funds were used by MAHAMUD to purchase food.

4

## Count 2

ACF administered the Child Care and Development Fund (CCDF) through which it provided block grants to states for the purpose of reimbursing child care providers for providing services to qualified recipients. The State of Minnesota received CCDF block grants through the Child Care Assistance Program (CCAP), which was administered by the Minnesota Department of Human Services (DHS) and Department of Children, Youth and Families (DCYF).

One of the requirements of participation in CCAP, by both child care providers and recipients, is that co-payments must be paid and collected. The co-payment is paid to the family's childcare provider biweekly. The co-payment amount is based on family size and annual income after allowable deductions.

Child care providers, including Future Leaders, submit claims through the Provider Hub, administered by the DHS and DCYF. In submitting claims for reimbursement from CCAP, child care providers were required to certify that they had collected co-pays consistent with program requirements, had waived co-pay collection, or were owed a co-payment debt.

Future Leaders was enrolled with DHS and DCYF as a licensed child care center permitted to submit applications to CCAP for reimbursement. Defendant submitted all applications for CCAP reimbursement on behalf of Future Leaders. Defendant knew that she was required to collect co-payments and that if she did not, recipients would be removed from the CCAP program, resulting in CCAP funds being

5

unavailable for reimbursement to Future Leaders. In each application, defendant certified to DHS and DCYF that she collected co-payments, when, in fact, she did not.

For example, on or about July 5, 2025, defendant submitted a claim to CCAP for reimbursement of child care services purportedly provided by Future Leaders between June 23 and July 6, 2025, to Child 1, claiming $900, and certifying that $192 co-payment had been collected.

On or about August 5, 2025, defendant submitted a claim to CCAP for reimbursement of child care services purportedly provided by Future Leaders between July 21 and August 3, 2025, to Child 2, claiming $1,229.76, and certifying that $100 co-payment had been collected.

On or about November 23, 2025, defendant submitted a claim to CCAP for reimbursement of child care services purportedly provided by Future Leaders between November 10 and November 23, 2025, to Child 3, claiming $900.00, and certifying that $98 co-payment had been collected.

Between in or around October 2022 and in or around November 2025, defendant, by and through Future Leaders, submitted claims for reimbursement from CCAP in the amount of approximately $4,629,929.01 on behalf of recipients for whom the proper co-payments were not collected as required.

3.     **Waiver of Indictment**. The defendant waives the right to be charged by Indictment. The defendant agrees to sign a written waiver of this right at the change of plea hearing.

6

4.      **Waiver of Pretrial Motions**. The defendant understands and agrees that she has certain rights to file pretrial motions in this case. As part of this plea agreement and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pretrial motions in this case.

5.      **Waiver of Constitutional Trial Rights**. The defendant understands that she has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that she has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that she has the right to persist in a plea of not guilty and, if she does so, she would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

6.    **Additional Consequences**. The defendant understands that as a result of her conviction, she could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

7.    **Statutory Penalties**. The defendant understands that Count One of the Information (wire fraud, in violation of 18 U.S.C. § 1343) is a felony offense that carries the following statutory penalties:

    a.    a maximum of 20 years in prison;

    b.    a supervised release term of not more than 3 years;

    c.    a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

    d.    restitution as determined by the Court; and

    e.    a mandatory special assessment of $100.

The defendant further understands that Count two of the Information (conspiracy to defraud the United States, in violation of 18 U.S.C. § 371) is a felony offense that carries the following statutory penalties:

    a.    maximum of 5 years in prison;

    b.    a supervised release term of not more than 3 years;

    c.    a mandatory special assessment of $100; and

    d.    restitution as determined by the Court.

8.    **Revocation of Supervised Release.** The defendant understands that if she were to violate any supervised release condition while on supervised release, the Court could revoke her supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18

8

U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that she be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9.    **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations for Count 1:

a.    Base Offense Level. The parties agree that the base offense level is 7. U.S.S.G. § 2B1.1(a)(1).

b.    Specific Offense Characteristics. The parties agree that a 14-level enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(H) because the intended loss exceeded $550,000 but was less than $1.5 million. The parties further agree the offense level should be increased by 2 levels because the offense involved conduct described in § 2B1.1(b)(12). The parties agree that no other specific offense adjustments apply.

c.    Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full,

complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw her guilty plea after it is entered.

d.  Zero-Point Offender Adjustment. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level reduction under U.S.S.G. § 4C1.1.

e.  Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.  Guidelines Range. If the adjusted offense level is 16, and the criminal history category is I, the Sentencing Guidelines range is 27-33 months of imprisonment.

g.  Fine Range. If the adjusted offense level is 18, the Sentencing Guidelines fine range is $10,000 to $100,000. U.S.S.G. § 5E1.2(c)(3).

The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations for Count 2:

a. Base Offense Level. The parties agree that the base offense level is 6. U.S.S.G. § 2B1.1(a)(1).

b. Specific Offense Characteristics. The parties agree that an 18-level enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(J) because the intended loss exceeded $3.5 million but was less than $9.5 million. The parties agree that no other specific offense adjustments apply.

c. Chapter 3 Adjustments. The parties agree that a 2-level enhancement applies pursuant to Guidelines § 3B1.3 because the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

d. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw her guilty plea after it is entered.

e. Zero-Point Offender Adjustment. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level reduction under U.S.S.G. § 4C1.1.

f.  <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

g.  <u>Guidelines Range</u>. If the adjusted offense level is 21, and the criminal history category is I, the Sentencing Guidelines range is 37-46 months of imprisonment.

h.  <u>Fine Range</u>. If the adjusted offense level is 21, the Sentencing Guidelines fine range is $15,000 to $150,000. U.S.S.G. § 5E1.2(c)(3).

10.  **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

11.    **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make motions for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), and to oppose any such motion made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

12.    **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

13.    **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Information. The defendant agrees that she owes restitution in an amount up to $5,479,929.

14.    **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant.

The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of her guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate her ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

15.    **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), all property, real or personal, which constitutes or is derived from proceeds traceable to the wire fraud scheme charged in Count 1 and conspiracy to defraud the United States charged in Count 2 of the Information.

The defendant agrees that the United States may, at its option, forfeit the property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest she may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture, directly or through any company she owns or controls, on any grounds. To the extent the defendant has requested remission or mediation of the forfeiture of the property, she

14

withdraws any such requests. The defendant agrees not to assist any third party in challenging the forfeiture of the property.

The defendant consents to the entry of a money judgment forfeiture in the amount up to $5,479,929, which represents the amount of proceeds the defendant obtained from the wire fraud scheme alleged in Count 1 of the Information and the conspiracy to defraud the United States alleged in Count 2. The defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from her in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

16.    **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant also waives the right to collaterally attack her conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the

15

offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with her attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

17.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

18.    **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with her decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

16

Dated:    7/9/26

                                        DANIEL N. ROSEN
                                        United States Attorney


                               BY:      MATTHEW C. MURPHY
                                        Assistant United States Attorney


                                        LORINDA LARYEA
                                        Chief, Fraud Section


                               BY:      SHANKAR RAMAMURTHY
                                        Assistant Chief
                                        Health Care Fraud Unit


Dated:    7/9/26

                                        FAHIMA EGEH MAHAMOUD
                                        Defendant


                                        DEBRA HILSTROM
Dated:    7/9/26                         Counsel for Ms. Mahamud

17